UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DUNKIN' DONUTS FRANCHISED          :
RESTAURANTS LLC, a Delaware        :
Limited Liability Company,         :
and                                :
DD IP HOLDER LLC, a Delaware       :
Limited Liability Company,         :
                    Plaintiffs,    :
                                   :
          v.                       :          CA 11-270 S
                                   :
ABM DONUTS, INC., a                :
Rhode Island Corporation, and      :
MARIO MORGADO, a Rhode Island      :
Resident,                          :
                    Defendants.    :


## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the Court is Plaintiffs' Motion for a Preliminary Injunction (Docket ("Dkt.") #3) ("Motion for Preliminary Injunction" or "Motion") filed by Plaintiffs Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC ("Plaintiffs," "Dunkin' Donuts," or "Dunkin'"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). See Guan Zhao Lin v. Holder, No. 10 Civ. 4316(RMB)(JLC), 2010 WL 2836144, at *1 n.1 (S.D.N.Y. July 2, 2010)("Under 28 U.S.C. § 636(b)(1)(B), a district judge may refer a motion for injunctive relief ... for a report and recommendation. A magistrate judge does not have authority to grant or deny injunctive relief, absent the parties' consent under

section 636(c)."); <u>Anglers of Au Sable v. U.S. Forest Serv.</u>, 402 F.Supp.2d 826, 828 (E.D. Mich. 2005)(withdrawing order of reference "because the magistrate judge is without authority (absent consent of the parties) to grant injunctive relief"). For the reasons stated herein, I recommend that the Motion be granted.

## I. Travel

Plaintiffs filed their Complaint (Dkt. #1) on July 8, 2011, and the instant Motion on July 15, 2011. Defendants ABM Donuts, Inc. ("ABM Donuts"), and Mario Morgado ("Mr. Morgado") (collectively "Defendants") filed their opposition to the Motion on August 16, 2011. A hearing was held on September 14, 2011. Thereafter, the Court took the matter under advisement.

## II. Facts[1]

On December, 24, 2004, Defendants entered into a Franchise Agreement with Plaintiffs for a Dunkin' Donuts franchise located at 100 Mill Street in Cumberland, Rhode Island. STATEMENT OF FACTS ("SOF") ¶ 3. Mr. Morgado, an officer and shareholder of ABM Donuts, signed the Franchise Agreement on behalf of Defendants. Id. ¶ 4. Mr. Morgado also executed a personal guarantee in which

---

[1] The facts are taken from the "STATEMENT OF FACTS" ("SOF") in Plaintiffs' Memorandum of Law in Support of Their Motion for a Preliminary Injunction ("Plaintiffs' Mem.") at 1-8. Defendants' counsel stated at the hearing that Defendants did not dispute those facts except, as indicated in n.2 of their memorandum, Defendants deny that Mr. Morgado's wife purchased products from the corporate Defendant. <u>See</u> Hearing Recording; <u>see also</u> Memorandum of Defendants in Opposition to Motion for Preliminary Injunction ("Defendants' Mem.") at 4 n.2. However, this allegation does not appear in the SOF. Accordingly, Plaintiffs' facts are undisputed.

he promised personally to perform and be bound by the provisions of the Franchise Agreement.  Id.

On June 18, 2010, Dunkin' filed a lawsuit against Defendants alleging that Defendants had breached the Franchise Agreement.  Id. ¶ 23.  During the pendency of the lawsuit, Defendants continued to operate their Dunkin' Donuts franchise.  Id.  Although the Franchise Agreement required Defendants to pay Dunkin' franchise and advertising fees on a weekly basis, Defendants failed to pay these fees.  Id. ¶ 24.  On December 20, 2010, Dunkin' served a Notice to Cure on Defendants advising that they were in default under the Franchise Agreement for failing to pay monies due to Dunkin' and giving them fifteen days to cure the defaults.  Id. ¶ 25.  Defendants failed to do so.  Id. ¶ 26.

On January 7, 2011, Dunkin' served Defendants with a Supplemental Notice of Termination ("Supplemental Notice") based on Defendants' failure to cure their financial defaults under the Franchise Agreement.  Id. ¶ 27.  The Supplemental Notice demanded that Defendants cease using Dunkin' trade names and proprietary marks immediately upon the effective date of termination[2] and that Defendants comply with their post-termination obligations set forth in the Franchise Agreement.

---

[2] The Supplemental Notice specified that the effective date of termination was "sixty (60) days from receipt of this Notice, or as provided by applicable law."  Plaintiffs' Mem., Exhibit ("Ex.") 1C ("Supplemental Notice") at 2.

In March 2011, Dunkin' and Defendants reached a conditional settlement of the lawsuit.  Id. ¶ 28.  The parties entered into a Settlement Agreement dated March 25, 2011, and the lawsuit was dismissed without prejudice on April 4, 2011.  Id.  Under the Settlement Agreement, during the time that Defendants continued to operate their Dunkin' Donuts shop, they were required to comply with all provisions of the Franchise Agreement, including timely payment of all fees.  Id. ¶ 29.  However, Defendants failed to pay any fees and satisfy other conditions set forth in the Settlement Agreement.  Id. ¶ 30.

On June 29, 2011, Dunkin' sent Defendants a letter informing them that they were in violation of the Settlement Agreement, reminding them that their Franchise Agreement remained terminated, and demanding that they pay all franchise and advertising fees owed to Dunkin'.  Id. ¶ 31.  To provide Defendants with a final opportunity to pay their financial obligations, the letter also stated that Dunkin' would wait seven days before taking further action.  Id.  Defendants failed to pay any franchise or advertising fees owed to Dunkin' within the time provided in the letter.  Id.

As of July 7, 2011, Defendants owed Dunkin' $64,845.54 in unpaid franchise, advertising, and other fees.  Id. ¶ 33. Defendants have refused to accept termination and are continuing to operate the store using Dunkin' trademarks, trade name, and trade dress without a license or Dunkin's consent.  Id. ¶ 34.

## III. Legal Standard

A plaintiff seeking a preliminary injunction must establish that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable injury in the absence of preliminary relief, (3) the balance of the equities tips in his favor, and (4) the injunction is in the public interest. Voice of Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365 (2008)); see also Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006). The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor. Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d at 18; Baldwin v. Bader, No. 07-46-P-H, 2008 WL 564642, at *1 (D. Me. Feb. 28, 2008). "This burden is a heavy one: 'Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.'" Friends of Magurrewock, Inc. v. U.S. Army Corps of Eng'rs, 498 F.Supp.2d 365, 369 (D. Me. 2007)(quoting Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)); see also Voice of Arab World, Inc., 645 F.3d at 32 ("A preliminary injunction is an 'extraordinary and drastic remedy[]' that 'is never awarded as of right.'")(internal citations omitted); Baldwin v. Bader, 2008 WL 564642, at *1 ("The court must 'bear

constantly in mind that an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'")(quoting <u>Saco Def. Sys. Div. Maremont Corp. v. Weinberger</u>, 606 F.Supp. 446, 450 (D. Me. 1985)) (alteration in original).

The *sine qua non* of the four part test is likelihood of success on the merits: if the moving party cannot demonstrate that it is likely to succeed in its quest, the remaining factors become matters of idle curiosity. <u>Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas</u>, 445 F.3d at 18 (quoting <u>New Comm Wireless Servs., Inc. v. SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002)); <u>see also McGuire v. Reilly</u>, 260 F.3d 36, 42 (1st Cir. 2001)(stating that movant must show "a substantial likelihood of success on the merits"). The greater the likelihood of success on the merits, the less that is required in the way of irreparable harm. <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 19 (1st Cir. 1996).

Nevertheless, the Supreme Court has repeatedly held that "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." <u>Voice of Arab World</u>, 645 F.3d at 32 (quoting <u>Weinberger v. Romero-Barceló</u>, 456 U.S. 305, 312, 102 S.Ct. 1798 (1982)). Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on

the merits can be rendered.  Id. (citing 11A Charles Alan Wright,
Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §
2948.1 (2d ed. 1995) at 139).  Thus, an injunction should issue
only where the intervention of a court of equity is essential in
order effectually to protect property rights against injuries
otherwise irremediable.  Id. (citing Romero-Barceló, 456 U.S. at
312).

**IV.  Undisputed Matters**

As previously noted, Defendants do not dispute the facts on
which Dunkin' bases its request for a preliminary injunction.  See
n.1 supra.  Defendants also do not dispute the legal standard for
issuance of a preliminary injunction.  See Memorandum of Defendants
in Opposition to Motion for Preliminary Injunction (Dkt. #21)
("Defendants'") Mem. at 4.   Indeed, as Dunkin' points out,
Defendants do not deny: (1) that they failed to pay franchise,
advertising, and other fees to Dunkin', even after receiving
written notice and an opportunity to cure their financial default,
and (2) that the termination of the Franchise Agreement was proper.
See Reply Brief in Support of Plaintiffs' Motion for Preliminary
Injunction (Dkt. #22) ("Reply Mem.") at 1.[3]

---

[3] The only support Defendants offer for their arguments is an
affidavit from Mr. Morgado which recites problems he had with his lenders
which caused him to be unable to fulfill his obligations under the
Settlement Agreement.  See Defendants' Mem., Attachment (Affidavit of
Mario Morgado).  However, the Court is constrained to agree with Dunkin'
that the fact that Defendants have incurred substantial debt to their
lenders is not relevant to the determination of the instant Motion.  See
Reply Mem. at 1.

**V. Application of Legal Standard**

 **A. Likelihood of Success**

As explained hereafter, I find that Dunkin' has a strong likelihood of success on all of its claims: (1) breach of contract; (2) trademark infringement; (3) unfair competition, and (4) trade dress infringement.

 **1. Breach of Contract**

It is undisputed that Defendants' Franchise Agreement was properly terminated and that they have refused to comply with their post-termination obligations under that agreement. Under the express terms of the Franchise Agreement, Defendants were required to pay franchise fees and advertising fees to Dunkin'. SOF ¶ 18. A failure to pay financial obligations constitutes a default which, if not timely cured, allows for immediate termination of the Franchise Agreement. Id. ¶ 20.

Based on the undisputed facts and applicable law, I find that Dunkin' is highly likely to succeed on its claim for breach of contract based on Defendants' failure pay their financial obligations. See Dunkin' Donuts Franchised Rests. LLC v. Cardillo Capital, Inc., 551 F.Supp.2d 1333, 1337 (M.D. Fla. 2008)("Failure to make payments called for under a contract constitute[s] a breach going to the root of the contract."); Dunkin' Donuts, Inc. v. Liu, CIVIL ACTION NOS. 99-3344, 00-3666, 2000 U.S. Dist. LEXIS 20694, at *20 (E.D. Pa. Nov. 20, 2000)(finding that plaintiffs demonstrated

a likelihood to prevail on their breach of contract claim where franchisee failed to pay fees while continuing to operate the shop).

### 2. Trademark Infringement

To prevail on a trademark infringement claim, a "plaintiff must show that it owns the mark in question, that the defendant's mark is similar to or the same as the plaintiff's mark, and that defendant's use of the mark is likely to cause confusion among consumers." Dunkin' Donuts, Inc. v. Gav-Stra Donuts, Inc., 139 F.Supp.2d 147, 158 (D. Mass. 2001). The Dunkin' Donuts marks have been properly registered in accordance with the Lanham Act, SOF ¶ 9, and are thus valid and legally protectable, see 15 U.S.C. § 1065; see also Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st Cir. 2006)("Registration is 'prima facie evidence of the validity of the registered mark.'")(quoting 15 U.S.C. § 1115(a)). Defendants have used and continue to use these marks in offering donuts and related products for sale. SOF ¶ 34.

Regarding the final element, "'there is a great likelihood of confusion when an infringer uses the exact trademark' as the plaintiff." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3rd Cir. 1992)(quoting Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3rd Cir. 1990)). In such cases, the "likelihood of confusion is inevitable ...." Opticians Ass'n of Am., 920 F.2d at 195. Indeed,

> [c]ases where a defendant uses an identical mark on
> competitive goods hardly ever find their way into the
> appellate reports. Such cases are "open and shut" and do
> not involve protracted litigation to determine liability
> for trademark infringement.

Id.

"Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act." S & R Corp., 968 F.2d at 375. Defendants here are using Dunkin' marks even though their Franchise Agreement has been terminated. SOF ¶¶ 27, 31, 34 "The continued use of a trademark after breach of a franchise agreement is alone dispositive of the infringement issue." Gav-Stra Donuts, Inc., 139 F.Supp.2d at 158. Defendants are operating as holdover franchisees.[4] Their continued use of the exact same marks as when they were licensed franchisees makes the likelihood of confusion inevitable. Accordingly, I find that Dunkin' has demonstrated a strong likelihood of success on its trademark infringement claims.

### 3. Unfair Competition and Trade Dress Infringement Claims

In Counts III and IV of the Complaint, Dunkin' alleges unfair competition and trade dress infringement. "[L]ikelihood of confusion is the essence of an unfair competition claim. Thus, the same factors are considered under section 1125(a) [Lanham Act

---

[4] Defendants admit that they are "holdover franchisees." Defendants' Mem. at 5

unfair competition and trade dress claims] as are considered under section 114 [Lanham Act trademark infringement claims]." <u>Champions Golf Club, Inc. v. The Champions Golf Club, Inc.</u>, 78 F.3d 1111, 1123 (6th Cir. 1996)(internal citations and quotation marks omitted); <u>see also</u> <u>id.</u> at 1122 ("unfair competition is closely related to Lanham Act infringement"). In order to prevail on a trade dress claim, a plaintiff must show (1) that the trade dress is inherently distinctive or has become inherently distinctive through secondary meaning, and (2) their trade dress is being used by another in a manner likely to cause confusion as to the origin of the goods or services. <u>L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.</u>, 79 F.3d 258, 262 (2nd Cir. 1996). I find that Dunkin' has made this showing. <u>See</u> SOF ¶ 10, 22, 34.

"An unfair competition claim, like infringement, calls on the plaintiff to show confusing similarity between services." <u>Freedom Savings & Loan Ass'n v. Way</u>, 757 F.2d 1176, 1186 (11th Cir. 1985). I find that Dunkin' has made this showing also. Defendants are using Dunkin's federally registered trademarks and trade name without authorization. It is beyond question that consumers associate Dunkin's distinctive marks with Dunkin' Donuts. SOF ¶¶ 10-14. Likelihood of confusion is established in this case where an unauthorized user of the trademark continues to use the identical, previously licensed trademark after revocation of the license. <u>See</u> <u>S & R Corp.</u>, 968 F.2d at 375 (finding that plaintiff

Jiffy Lube met its burden for issuance of preliminary injunction where defendants were "using the same legally protectable trademark, owned by Jiffy Lube, and that their concurrent use is highly likely to cause consumer confusion about [defendants'] affiliation with the franchise"); see also Dunkin' Donuts Inc. v. N. Queens Bakery, Inc., 216 F.Supp.2d 31, 44 (E.D.N.Y. 2001)("Here, defendants are using the exact same mark as they used when they were properly franchised, which will generate confusion among Dunkin' Donut[s] customers as to the source of defendants' goods and services."). Accordingly, I find that Dunkin' is likely to succeed on its trade dress and unfair competition claims.

**B. Irreparable Harm**

Courts have historically found that irreparable injury is presumed in franchise cases in which a franchisor has established that a former franchisee is using the franchisor's trademarks after termination. El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1038 (9th Cir. 2003)("In a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits.'")(quoting GoTo.Com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 n.4 (9th Cir. 2000)); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998)(finding likelihood of confusion of former franchisee's products with McDonald's products was sufficient showing of irreparable injury); id. ("a sufficiently strong showing of likelihood of confusion [caused by trademark

infringement] may by itself constitute a showing of ... [a] substantial threat of irreparable harm")(alterations in original); Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2nd Cir. 1971)(stating that where "there is ... high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows").

The First Circuit "has previously held that 'a trademark plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm.'" Voice of Arab World, Inc., 645 F.3d at 32 (quoting Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 3 (1st Cir. 1997)). However, in Voice of the Arab World, the Court of Appeals stated that the continuing "validity of this rule has been called into question by the Supreme Court's recent opinion in eBay [Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837 (2006)]." Voice of Arab World, Inc., 645 F.3d at 32; id. at 33 (noting that in eBay the Supreme Court found that the court of appeals had improperly established "a 'general rule,' unique to patent disputes ...").[5]

---

[5] In describing the error made by the court of appeals, the Supreme Court in eBay stated:

> In reversing the District Court, the Court of Appeals departed in the opposite direction from the four-factor test. The court articulated a "general rule," unique to patent disputes, "that a permanent injunction will issue once infringement and validity have been adjudged." 401 F.3d [1323,] 1338 [Fed. Cir. 2005]. The court further indicated that injunctions should be denied only in the "unusual" case, under "exceptional circumstances" and "'in rare instances ... to protect the public interest.'" Id., at 1338-1339. Just as

13

While acknowledging the uncertainty, the First Circuit has specifically declined to address whether its previous rule, i.e., "that a trademark plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm," Voice of Arab World, Inc., 645 F.3d at 34 (citing Am. Bd. of Psychiatry & Neurology, Inc., 129 F.3d at 3), is analogous to the "general" or "categorical" rules rejected by the Supreme Court in eBay. Id. (citing eBay, 547 U.S. at 393-94).

Regardless of whether a presumption of irreparable harm continues to exist, however, this Court is satisfied that Dunkin' has shown that it is suffering and will continue to suffer irreparable harm by Defendants' unlicensed use of its marks. See SOF ¶¶ 12, 14, 17, 34. As the court in Northern Queens Bakery, Inc., explained:

> A trademark epitomizes the goodwill of a business. This creation and perpetuation of goodwill depends on customer recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase—this is the reason *d'etre* for the sale. The need to issue a preliminary injunction where a former licensee continues to use a trademark after its license to do so has been revoked is compelling because of the danger that consumers will be confused and believe that the former licensee is still an authorized representative

---

the District Court erred in its categorical denial of injunctive relief, the Court of Appeals erred in its categorical grant of such relief.

eBay Inc. v. MercExchange, L.L.C. 547 U.S. 388, 393-394, 126 S.Ct. 1837 (2006)(quoting eBay Inc. v. MercExchange, L.L.C., 401 F.3d 1323 (Fed. Cir. 2005)).

of the trademark holder.

N. Queens Bakery, Inc., 216 F.Supp.2d at 40 (internal quotation marks and citations omitted); id. ("Where the party seeking a preliminary injunction in a trademark case shows that it will lose control over the reputation of its trademark pending trial, the requirement of irreparable injury is satisfied.")(internal quotation marks omitted); id. ("[D]amages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm."); see also El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 395 (2nd Cir. 1986)("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark.").

It also bears mentioning that Defendants, in signing the Franchise Agreement, specifically conceded that their post-termination use of Dunkin' Donuts' trademarks constitutes irreparable harm subject to injunctive relief. SOF ¶ 17; Plaintiffs' Memorandum of Law in Support of Their Motion for a Preliminary Injunction ("Plaintiffs' Mem."), Ex. 1.A (Franchise Agreement) ¶ 9.4.3; see also Dunkin' Donuts Franchised Rests. LLC v. D & D Donuts, Inc., 566 F.Supp.2d 1350, 1361 (M.D. Fla. 2008)(finding irreparable harm to Dunkin', in part, because "[p]ursuant to the executed franchise agreements, [d]efendants agreed that unauthorized use of [p]laintiffs' trademark claim

constitutes irreparable harm").

Accordingly, I find based on the undisputed facts that Plaintiffs are likely to suffer irreparable harm unless the preliminary injunction is granted. See Ferrellgas Partners, L.P. v. Barrow, 143 Fed.Appx. 180, 190 (11th Cir. 2005)(noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill")(alteration in original); id. at 190-91 ("Irreparable injury can also be based upon the possibility of confusion."); id. ("[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.  Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.").

### C.  Balance of the Equities

The Court is also satisfied that the harm to Dunkin' from Defendants' unlicensed use of its marks outweighs any harm Defendants may suffer from the grant of the requested injunction. Dunkin' accurately points out that in contrast to the harm it is suffering, any harm to Defendants is completely self-inflicted and thus cannot be deemed irreparable as a matter of law.  Plaintiffs' Mem. at 18; see also Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 839 (3rd Cir. 1995)(holding that self-inflicted harm cannot be deemed "irreparable"); S & R Corp., 968 F.2d at 379

(stating that the terminated franchise's "self-inflicted harm is far outweighed by the immeasurable damage done Jiffy Lube by the infringement of its trademark"). This conclusion comports with that reached by other courts in similar circumstances. See D & D Donuts, Inc., 566 F.Supp.2d at 1362 ("Weighing [d]efendants' self-inflicted injury against [p]laintiffs' immeasurable losses to its hard-earned goodwill, the [c]ourt finds that the balance of harms weighs decisively in favor of granting the requested injunctive relief."); see also Tanel Corp. v. Reebok Int'l, Ltd., 774 F.Supp. 49, 51 (D. Mass. 1990)(weighing fact that plaintiff "has engaged in extensive advertising and promotion of its mark over the past four years" and concluding that "the harm to plaintiff outweighs any harm to defendant").

### D. Public Interest

A preliminary injunction in this case "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace." Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1279, 1304 (11th Cir. 2001); see also S & R Corp., 968 F.2d at 379 ("In a trademark case, the public interest is 'most often a synonym for the right of the public not to be deceived or confused."). Relatedly, the public has an interest in knowing whether a coffee shop from which they purchase products is in fact an authorized Dunkin' Donuts coffee shop. See

Re/Max N. Cent., Inc. v. Cook, 272 F.3d 424, 433 (7th Cir. 2001)("the public also has an interest in knowing with whom they do business and whether or not the agent is a franchisee of a given real estate corporation").  As the Second Circuit has observed:

> [T]he public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increases the probability of consumer confusion.  A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder.  When such party, as defendants here, loses its authorization yet continues to use the mark, the potential for consumer confusion is greater than in the case of a random infringer. Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public.

Church of Scientology Int'l v. Elmira Mission of Church of Scientology, 794 F.2d 38, 44 (2nd Cir. 1986).

Lastly, the public has an interest in requiring parties to honor their contractual obligations.  See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007)("[I]ssuing the preliminary injunction would hold Defendants to the terms of the bargain they entered into through the franchise agreement.  Enforcement of contractual duties is in the public interest."); Grosso Enters., Inc. v. Domino's Pizza LLC, Civil Action No. 11-1184, 2011 WL 816620, at *6 (E.D. Pa. Mar. 9, 2011)("the public interest favors enforcing valid contracts and remedying wrongful breaches"); Johnson v. Cohan, 96-07352, 1999

18

Mass. Super. LEXIS 19, at *18 (Mass. Super. Feb. 3, 1999)(noting "the public interest in enforcement of contracts"). Here it is undisputed that Defendants have breached their Franchise Agreement. Accordingly, the public interest favors the issuance of the preliminary injunction.

## VI. Defendants' Arguments

Defendants argue unconvincingly that, because they are "holdover franchisees," Defendants' Mem. at 5, and have not altered the trademarks or signage at the franchise, Plaintiffs do not have a likelihood of success on their trademark infringement claims, see id. Defendants' argument ignores the fact that by virtue of the termination of the Franchise Agreement Defendants no longer have the right to use Plaintiffs' trademarks or signage.

Defendants complain that Plaintiffs waited for "several months," id. at 6, after execution of the Settlement Agreement and partial performance by both parties before filing this action, see id. However, the passage of time was a direct result of the option period running under the Settlement Agreement. Efforts to settle disputes are not counted as delay. See Bowen Inv., Inc. v. C-Nine Seven, Inc., Civil Action No. 04-10702-RWZ, 2006 U.S. Dist. LEXIS 43692, at *9 (D. Mass. June 28, 2006)("Courts do not penalize reasonable delay attributable to good-faith settlement negotiations."); see also Ocean Garden, Inc. v. Marktrade Co., 953

F.2d 500, 508 (9th Cir. 1991)(affirming injunctive relief even though plaintiff waited over six months from filing of its complaint to move for preliminary injunction because much of delay was attributable to settlement negotiations).

Defendants portray themselves as being "David" in a conflict with "Goliath" and suggest that this circumstance causes the equities to weigh in their favor. <u>See</u> Defendants' Mem. at 6. They additionally assert that the Settlement Agreement operates "to <u>ease</u> the Defendants <u>from</u> the Franchise." <u>Id.</u> Plaintiffs, however, dispute this characterization of the Settlement Agreement:

> The Settlement Agreement was entered to allow Defendants an opportunity to possibly sell their franchise and to recoup money invested in their business. Under the terms of the Settlement Agreement, Dunkin' or its designee had a 120-day option to purchase Defendants' franchise for an established price. After Dunkin' exercised that option, all that Defendants had to do was to deliver the franchise free and clear of all liens and encumbrances. The Settlement Agreement was expressly conditioned on Defendants' ability to do that, and they could not do it. Indeed, as they readily admit, Defendants owe a substantial debt to their lenders.

Reply Mem. at 2-3.

The Court has reviewed the Settlement Agreement and finds that Defendants' description of that document is accurate. The Settlement Agreement expressly allowed Plaintiffs to re-file the lawsuit because the settlement was conditional – it was possible that either Dunkin' would decline to exercise its option to purchase Defendants' shop or Defendants would fail to meet their

obligation to deliver the franchise free and clear of liens and encumbrances. When the latter circumstance occurred, the Settlement Agreement became null and void, and Plaintiffs were free to re-file the lawsuit. The Court disagrees with Defendants' contention that the equities here weigh in their favor.

Defendants also contend that the balancing of hardships in this case requires "reasonable discovery to validate the position of the Plaintiffs." Defendants' Mem. at 7. However, Defendants do not specify what discovery is required, and they cite no cases to support this request. The Court sees no basis for allowing it.

Finally, Defendants suggest that there are "less oppressive means by which to provide the Plaintiffs with some sort of relief concerning their claim that they are irreparably harmed ...." Id. at 4. However, at the hearing the Court asked Defendants' counsel to identify any provisions in the proposed order, see Plaintiffs' Mem., Attachment 16, which were "oppressive," and he indicated that there were none.[6]

## Summary

Defendants do not dispute that they have failed to pay franchise and other fees to Dunkin', that the termination of their Franchise Agreement was legally permissible, and that they are

---

[6] Defendants' counsel did indicate, however, that if the preliminary injunction were granted his client would have to consider other judicial remedies. The allusion presumably was to the Bankruptcy Court.

continuing to operate a Dunkin' shop using the Dunkin' proprietary marks without a license to do so. Based on these facts and the applicable law, I find that (1) Dunkin' is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable injury if the injunction is not granted, (3) the balance of the equities tips in Dunkin's favor, and (4) the injunction is in the public interest. Accordingly, Plaintiffs have met the heavy burden of showing that their request for a preliminary injunction should be granted.

## Conclusion

For the reasons stated above, I recommend that the Motion for Preliminary Injunction be granted and that Plaintiffs' proposed order for such injunction be entered. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); District of Rhode Island Local Rule Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

**/s/ David L. Martin**

DAVID L. MARTIN
United States Magistrate Judge
October 4, 2011